# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| Amit Gauri, | ) | Chapter 7 |
| Debtor. | ) | Case No. 21-03680 |
| | ) | |
| Catherine Steege, not individually but as trustee for Amit Gauri, | ) | Adv. Pro. No. _____ |
| Plaintiff, | ) | |
| v. | ) | Honorable Janet S. Baer |
| Marc Whitaker, | ) | |
| Defendant. | ) | |

**TRUSTEE'S COMPLAINT FOR BREACH OF CONTRACT, TURNOVER OF PROPERTY OF THE ESTATE, AND AVOIDANCE AND RECOVERY OF PREPETITION CONSTRUCTIVE FRAUDULENT TRANSFERS**

Catherine Steege, not individually but in her capacity as chapter 7 trustee (the "**Trustee**") for the estate of Amit Gauri (the "**Debtor**"), complains against the Defendant Marc Whitaker ("**Defendant**") as follows:

## NATURE OF THE COMPLAINT

1. Defendant is the Debtor's friend and business partner and a member of AGPD Paving, LLC ("**AGPD Paving**"). Before the commencement of the Debtor's bankruptcy case, the Debtor transferred five percent (5%) of his membership interest in AGPD Paving for $15,000. Defendant executed a promissory note agreeing to pay $15,000, plus interest at the rate of 6.25%. The promissory note further provides that interest accrues at a rate of 11.25% upon default.

Defendant defaulted on his obligations under the promissory note and currently owes the estate the principal balance, plus interest at the default rate and attorneys' fees and other costs. The Trustee brings suit to collect on the promissory note.

2. This adversary complaint also seeks to avoid and recover various prepetition constructive fraudulent transfers made by the Debtor to or for the benefit of Defendant. During the four years before the Debtor's bankruptcy case, the Debtor made approximately nineteen transfers to Defendant in various amounts. The Debtor did not receive reasonably equivalent value in exchange for these transfers and was insolvent at the time of these transfers. Therefore, such prepetition transfers should be avoided. *See* 11 U.S.C. § 548(a); 740 ILCS 160/5(a)(2), 6(a), 8(a).

## PARTIES

3. Defendant is a resident of Illinois and lives in Chicago.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) because this adversary proceeding is related to the above-captioned case pending in the United States Bankruptcy Court for the Northern District of Illinois.

5. To the extent this Court does not have constitutional authority to enter a final order on the Trustee's claims absent consent, the Trustee hereby consents to the entry of a final order.

6. Venue is proper in this District pursuant to 28 U.S.C. §1409(a).

## FACTUAL ALLEGATIONS

7. On March 22, 2021, the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code. (Bankr. Dkt. 1.)

8. On October 12, 2022, the Court denied confirmation of the Debtor's plan of reorganization in a bench ruling (Bankr. Dkt. 285), and the Debtor's case was subsequently converted to a case under chapter 7 on November 16, 2022. (Bankr. Dkt. 290.)

9. On November 18, 2022, the Trustee was appointed as the chapter 7 trustee of the Debtor's bankruptcy estate. (Bankr. Dkt. 296.)

***The Debtor's Transfer of the AGPD Paving Membership Interest***

10. On January 1, 2021, Defendant and the Debor executed a Membership Interest Purchase Agreement and accompanying Promissory Note (the "**Purchase Agreement**" and the "**Promissory Note**," both attached hereto as **Exhibit A**), pursuant to which the Debtor agreed to transfer five percent (5%) of his membership interest in AGPD Paving to Defendant.

11. Under the Promissory Note, Defendant agreed to pay $15,000 to the Debtor in exchange for the 5% membership interest in AGPD Paving, plus 6.25% interest accruing from January 1, 2021 until the date of payment. The Promissory Note further provided that Defendant was to begin making installment payments in the amount of $1,250 plus interest beginning on February 1, 2021, with the unpaid balance due in full on December 1, 2022.

12. The Promissory Note further provided that in the event of a default, interest became due at the rate of 11.25% per annum. (*See* Ex. A, Promissory Note, §§ 1-2.)

13. Defendant has not made a single payment under the Promissory Note and has been in default since February 1, 2021. Accordingly, interest has been accruing at a rate of 11.25% since February 1, 2021. (*See Id.* at § 2, 7.)

14. Furthermore, the Purchase Agreement provides that Defendant shall "indemnify and hold harmless" the Debtor from and against all claims, including costs, expenses, and attorneys' fees, "arising from or relating to [] any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by" Defendant pursuant to the Purchase Agreement. (Purchase Agreement, Sec. 5.12.)

15. By a letter dated March 2, 2023, the Trustee made a demand on Defendant (the "**Demand Letter**," attached hereto as **Exhibit B**) for payment due under the Purchase Agreement

3

and Promissory Note. Despite the Trustee's demand, Defendant has not paid the amounts due under the Purchase Agreement and Promissory Note. In response to the Trustee's demand letter, Defendant has not disputed that the amount is due and has promised to make payment, but has failed to do so.

16. As of the filing of this complaint, Defendant owes the Debtor's bankruptcy estate a total of $17,714.12 plus attorneys' fees, consisting of $15,000, plus interest at the rate of 6.25% running from January 1, 2021 through January 31, 2021 in the amount of $79.62 and interest at the rate of 11.25% running from February 1, 2021 through August 24, 2023 in the amount of $2,634.50 (the date of this complaint). In addition, per diem interest continues to accrue each day thereafter through the date payment is made in the amount of $4.62 per day.

### *The Debtor's Prepetition Transfers to Defendant*

17. Additionally, between March 2019 and February 2021, the Debtor made gifts for no consideration which he described as "[p]ayment[s] for support" totaling $12,820, to Defendant. (*See* Bankr. Dkt. 173, *Amended Statement of Financial Affairs*) (the "**Constructive Fraudulent Transfers**"). A list of the dates of these Constructive Fraudulent Transfers and their amounts, as shown in the Debtor's Amended Statement of Financial Affairs, is produced below:

| Transferee | Date | Transfer Type | Amount |
|---|---|---|---|
| Marc Whitaker | 01/16/2019 | Check | $1,000.00 |
| Marc Whitaker | 02/01/2019 | Check | $550.00 |
| Marc Whitaker | 02/19/2019 | Check | $1,550.00 |
| Marc Whitaker | 03/21/2019 | Check | $750.00 |
| Marc Whitaker | 01/07/2020 | Quickpay | $500.00 |

4

| | | | |
|---|---|---|---|
| Marc Whitaker | 10/15/2020 | Check | $500.00 |
| Marc Whitaker | 10/15/2020 | Quickpay | $500.00 |
| Marc Whitaker | 11/02/2020 | Quickpay | $1,400.00 |
| Marc Whitaker | 11/09/2020 | Quickpay | $250.00 |
| Marc Whitaker | 11/09/2020 | Check | $250.00 |
| Marc Whitaker | 11/17/2020 | Check | $750.00 |
| Marc Whitaker | 11/17/2020 | Quickpay | $720.00 |
| Marc Whitaker | 11/20/2020 | Check | $1,400.00 |
| Marc Whitaker | 12/05/2020 | Check | $200.00 |
| Marc Whitaker | 12/15/2020 | Quickpay | $500.00 |
| Marc Whitaker | 01/07/2021 | Check | $500.00 |
| Marc Whitaker | 01/07/2021 | Check | $500.00 |
| Marc Whitaker | 02/26/2021 | Check | $500.00 |
| Marc Whitaker | 02/26/2021 | Quickpay | $500.00 |
| **TOTAL:** | | | **$12,820.00** |

18.     Pursuant to the Demand Letter, the Trustee asked Defendant to return the Constructive Fraudulent Transfers to the bankruptcy estate. Although Defendant stated that he would return the Constructive Fraudulent Transfers to the bankruptcy estate, Defendant has failed to do so.

## COUNT I
## ACTION FOR BREACH OF CONTRACT

19. The Trustee realleges and incorporates by reference the allegations set forth in paragraphs 1 through 15, as though fully set forth herein.

20. The Purchase Agreement and the Promissory Note are binding and enforceable contracts.

21. Defendant breached the Purchase Agreement and Promissory Note by failing to pay all amounts due to the Debtor under the Purchase Agreement and Promissory Note.

22. Pursuant to the Purchase Agreement and the Promissory Note, the Debtor is entitled to damages from Defendant in an amount equal to (i) the outstanding principal due under the Purchase Agreement and Promissory Note; plus (ii) all accrued and unpaid interest thereon from February 1, 2021 until the date of payment; plus (iii) an amount equal to the costs, expenses, and attorneys' fees incurred as a result of Defendant's breach of his obligations under the Purchase Agreement and Promissory Note.

23. As a direct and proximate cause of Defendant's breach of the Purchase Agreement and Promissory Note, the Debtor, and by extension, the Debtor's bankruptcy estate, has suffered damages in the amount of at least $17,714.12, plus an amount equal to the costs, expenses, and attorneys' fees incurred as a result of Defendant's breach of his obligations under the Purchase Agreement and Promissory Note and any default interest due through the date of payment.

WHEREFORE, the Trustee respectfully requests the entry of a judgment against Defendant in the amount of $17,714.12, plus an amount equal to the costs, expenses, and attorneys' fees incurred as a result of Defendant's breach of his obligations under the Purchase Agreement and Promissory Note and any default interest due through the date of payment.

# COUNT II
## ACTION FOR AVOIDANCE AND RECOVERY OF PREPETITION CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO §§ 548(A)(1)(B) AND 550(A) OF THE BANKRUPTCY CODE

24. The Trustee realleges and incorporates by reference the allegations set forth in paragraphs 1 through 15, as though fully set forth herein.

25. Between January 2020 through February 2021, within two years prior to the Petition Date, the Debtor transferred $8,970.00 in Constructive Fraudulent Transfers to Defendant without receiving reasonably equivalent value in exchange therefor within the meaning of section 548(a)(1)(B) of the Bankruptcy Code. In fact, on information and belief, the Debtor did not receive any value, adequate or otherwise, in exchange for the Constructive Fraudulent Transfers to or for the benefit of Defendant.

26. The Constructive Fraudulent Transfers constituted transfers of an interest of the Debtor in property.

27. The Debtor made the Constructive Fraudulent Transfers immediately or mediately, to or for the benefit of Defendant.

28. At the time of the Constructive Fraudulent Transfers, the Debtor was in financial distress. In the months leading up to the filing of his chapter 11 petition, one of the Debtor's largest creditors, Parent Petroleum, Inc. ("**Parent Petroleum**"), had received a judgement against the Debtor in the amount of $2.8 million for amounts the Debtor personally guaranteed that had come due—but were not paid—in August 2016. (*See Parent Petroleum Inc. v. Amit Gauri, et al.*, Case. No. 2017-L-1392, Ill. Cir. Ct., Dkts. 1, 34). The Debtor's schedules also show that the residence the Debtor owns in Michigan is encumbered by a contingent mortgage claim. (*See* Bankr. Dkts. 24, 105.)

29. Upon information and belief, by the time of the Constructive Fraudulent Transfers, the Debtor had generally stopped paying his debts as they became due.

30. Upon information and belief, at the time of the Constructive Fraudulent Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as those debts became due, and in fact was unable to pay his debts as they came due.

31. The Debtor was insolvent on the dates on which he made the Constructive Fraudulent Transfers to Defendant or became insolvent as a result of such transfers. The Debtor's chapter 11 petition—filed shortly after the Debtor transferred the Constructive Fraudulent Transfers to Defendant—reveals that the Debtor had an estimated $1-10 million in assets and $10-50 million in liabilities at the time of the Petition Date, (Bankr. Dkt. 1), including the $2.8 million judgment in favor of Parent Petroleum.

32. Pursuant to section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid the Constructive Fraudulent Transfers to Defendant.

33. Pursuant to section 550(a) of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the value of the Constructive Fraudulent Transfers from Defendant as the initial transferee of the Constructive Fraudulent Transfers.

WHEREFORE, the Trustee respectfully requests the entry of an order in favor of the Trustee and against Defendant (a) avoiding the Constructive Fraudulent Transfers from the Debtor to Defendant in the two years prior to the Petition Date; (b) recovering the value of the Constructive Fraudulent Transfers for the sole benefit of the Debtor's estate, plus prejudgment interest running from the date of the Demand Letter; and (c) granting the Trustee such other and further relief as the Court deems just and proper.

### COUNT III
### ACTION FOR AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 740 ILCS 160/5(A)(2), 160/6(A), AND 160/8(A) AND §§ 544(B)(1) AND 550(A) OF THE BANKRUPTCY CODE

34. The Trustee realleges and incorporates by reference the allegations set forth in paragraphs 1 through 15, as though fully set forth herein.

35. Between January 2019 through February 2021, within four years prior to the Petition Date, the Debtor transferred $12,820[1] in Constructive Fraudulent Transfers to Defendant without receiving reasonably equivalent value in exchange therefor within the meaning of sections 5(a)(2) and 6(a) of the Illinois Uniform Fraudulent Transfer Act (the "**Illinois UFTA**"). In fact, on information and belief, the Debtor did not receive any value, adequate or otherwise, in return for the Constructive Fraudulent Transfers to or for the benefit of Defendant.

36. The Constructive Fraudulent Transfers between January 2019 through February 2021 constituted transfers of an interest of the Debtor in property.

37. The Debtor made the Constructive Fraudulent Transfers immediately or mediately, to or for the benefit of Defendant.

38. At the time of the Constructive Fraudulent Transfers, the Debtor was in financial distress. As set forth above, in the months leading up to the filing of his chapter 11 petition, Parent Petroleum received a judgement against the Debtor in the amount of $2.8 million for amounts the Debtor personally guaranteed. (*See Parent Petroleum Inc. v. Amit Gauri, et al.*, Case. No. 2017-L-1392, Ill. Cir. Ct., Dkts. 1, 34). The Debtor's schedules also show that the residence the Debtor owns in Michigan is completely encumbered by a contingent mortgage claim. (*See* Bankr. Dkts. 24, 105).

---

[1] This amount includes the transfers made between January 2020-February 2021 referenced in Count II.

39. Upon information and belief, by the time of the Constructive Fraudulent Transfers, the Debtor had generally stopped paying his debts as they became due.

40. Upon information and belief, at the time of the Constructive Fraudulent Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as those debts became due, and in fact was unable to pay his debts as they came due.

41. The Debtor was insolvent on the dates on which he made the Constructive Fraudulent Transfers to Defendant or became insolvent as a result of such transfers. As stated above, the Debtor's chapter 11 petition reveals that the Debtor had an estimated $1-10 million in assets and $10-50 million in liabilities at the time of the Petition Date, (Bankr. Dkt. 1), including a $2.8 million judgment in favor of Parent Petroleum.

42. Creditors of the Debtor exist that could avoid the Constructive Fraudulent Transfers and could obtain further relief pursuant to sections 8 and 9 of the Illinois UFTA. Specifically, these creditors could avoid the Constructive Fraudulent Transfers pursuant to section 8(a) of the Illinois UFTA, and could obtain a judgment for the value of the Constructive Fraudulent Transfers against Defendant as the initial transferee of the Constructive Fraudulent Transfers or person for whose benefit the Constructive Fraudulent Transfers were made, subject to section 9(b)(1) of the Illinois UFTA. For example, Parent Petroleum is a creditor of the Debtor that as of the Petition Date could have avoided the Constructive Fraudulent Transfers or obtained further or other relief pursuant to section 8(a) of the Illinois UFTA. Therefore, Parent Petroleum as of the Petition Date could have obtained a judgment for the value of the Constructive Fraudulent Transfers against Defendant, as the initial transferee of the Constructive Fraudulent Transfers or person for whose benefit the Constructive Fraudulent Transfers were made.

43. Pursuant to section 544(b)(1) of the Bankruptcy Code, the Trustee may avoid the Constructive Fraudulent Transfers.

44. Pursuant to section 550(a) of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the value of the Constructive Fraudulent Transfers from Defendant as the initial transferee of the Constructive Fraudulent Transfers or person for whose benefit the Constructive Fraudulent Transfers were made.

WHEREFORE, the Trustee respectfully requests the entry of an order in favor of the Trustee and against Defendant (a) avoiding the Constructive Fraudulent Transfers from the Debtor to Defendant; (b) recovering the value of the Constructive Fraudulent Transfers for the sole benefit of the Debtor's estate, plus prejudgment interest running from the date of the Demand Letter; and (c) granting the Trustee such other and further relief as the Court deems just and proper.

Dated: August 24, 2023

Respectfully submitted,

Catherine Steege, not individually but as the chapter 7 trustee for the estate of Amit Gauri

By: /s/ *Catherine Steege*_____
One of her attorneys

Catherine Steege (6183529)
Angela M. Allen (6295519)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, Illinois 60654-3456
PH:    312/923-2952
csteege@jenner.com
aallen@jenner.com